UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMPM, LLC and NORTH END MOTORS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 1:25-cv-11133-JEK |
| KIIT RENEWABLE ENERGY LLC, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**KOBICK, J.**

Plaintiffs AMPM, LLC and North End Motors, Inc. brought this action against defendant KIIT Renewable Energy LLC for breaching its contractual obligations to construct a canopy of solar panels that sufficiently prevented rain, snow, and ice from falling onto their parking lot below. Pending before the Court is KIIT's motion to dismiss for failure to state a claim. For the reasons that follow, the motion will be granted in part and denied in part. Because the plaintiffs have agreed to dismiss their Chapter 93A and equitable relief claims, those claims will be dismissed. Their other claims for breach of contract and breach of implied covenant of good faith and fair dealing will proceed to discovery.

## BACKGROUND

The following facts, assumed true on a motion to dismiss, are drawn from the complaint and documents fairly incorporated by reference in that pleading. *See Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024).

AMPM owns property at 390 Turnpike Street in Canton, Massachusetts. ECF 1-2, ¶ 4. North End rents that property to sell high-end used vehicles and automotive services. *Id.* ¶ 5. On December 8, 2016, AMPM, North End, and KIIT entered into a sublease agreement. *Id.* ¶ 6; *see* ECF 5-1. Under that agreement, KIIT agreed to pay the plaintiffs approximately $20,000 per year in exchange for the privilege of constructing and operating a solar panel canopy over the property's parking lot. ECF 5-1, at 2 and § 2; *see* ECF 1-2, ¶ 6.

The installed canopy was supposed to protect North End's cars from rain and snow, but its panels did not prevent either from passing through to the vehicles parked below. ECF 1-2, ¶¶ 7, 9. As a result, the parties amended the sublease agreement on September 13, 2018. *Id.* ¶¶ 6, 9; *see* ECF 5-2. The amendment stated that KIIT would install a "water mitigation system" to "provide reasonable gaskets between solar panels which will allow for normal and usual expansion and contraction due to weather, temperature and other atmospheric conditions, while still providing a *reasonably semi-impermeable* surface between the panels in order to reasonably shed rainwater from the expansion and contraction area between the panels." ECF 5-2, § 3 (emphasis altered); *see* ECF 1-2, ¶ 10. KIIT also agreed that this system would provide "gutters on the edge of [the canopy] to reasonably collect runoff from the [canopy]" and "downspouts from such gutters at reasonable intervals . . . , taking the rainwater from such gutters and directing it down to the paved surface below the [canopy]." ECF 5-2, § 3; *see* ECF 1-2, ¶ 10. The parties acknowledged in the amendment "that due to the open sides of the solar arrays . . . and the need for wire and other pass-through elements, as well as the nature of . . . natural expansion and contraction," the water mitigation system "is not, and cannot be designed and constructed to be[,] completely impermeable." ECF 5-2, § 3.

The gaskets installed between the solar panels did not stop water or snow from penetrating the canopy, prevent ice from building up or falling onto vehicles, or protect customers viewing cars parked below. ECF 1-2, ¶¶ 11-12. KIIT indicated that it could add tape over the gaskets to help seal the panels but, despite the plaintiffs' repeated requests, has not done so. *Id.* ¶¶ 13-14, 16-17. Consequently, rain continues to cause "a constant flow of water through the solar panel," which unreasonably interferes with the plaintiffs' businesses and increases their liability. *Id.* ¶ 15. For example, vehicles need to be de-iced before they can be shown to customers, and a customer has fallen due to the buildup of ice. *Id.* The plaintiffs therefore allege that the solar canopy is not "reasonably semi-impermeable" because "water continues to pour through" it, creating "a hazard to both [p]laintiffs' employees and customers." *Id.* ¶¶ 20, 25.

AMPM and North End filed this action in Norfolk Superior Court in February 2025. ECF 1-2. Their complaint asserts claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), a violation of M.G.L. c. 93A (Count III), and equitable relief (Count IV). *Id.* ¶¶ 18-37. Invoking diversity jurisdiction, KIIT removed the case to this Court in April 2025. ECF 1. KIIT moved to dismiss the complaint for failure to state a claim in May 2025. ECF 4. After receiving the plaintiffs' opposition and further briefing from the parties, the Court held a hearing and took the motion under advisement. ECF 9, 12, 13, 15.

### STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

## DISCUSSION

After KIIT filed its motion to dismiss, the plaintiffs agreed to dismiss the Chapter 93A claim without prejudice to preserve their ability to amend the complaint should discovery produce evidence of unfair and deceptive trade practices by KIIT. ECF 9, at 1 n.1. They further agreed to dismiss their equitable relief claim because the complaint separately requests removal of the solar canopy as a form of equitable relief. *Id.*; *see* ECF 1-2, at 7. Counts III and IV are dismissed accordingly.

## I.     Breach of Contract.

Count I asserts a breach of contract claim against KIIT. To sustain this claim, AMPM and North End must allege that (1) there was an agreement among the parties; (2) the agreement was supported by consideration; (3) they were ready, willing, and able to perform their part of the contract; (4) KIIT committed a breach of the contract; and (5) they suffered harm as a result. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016). According to the complaint, the parties entered into a sublease agreement that, as amended, required KIIT to add "gaskets between solar panels" that would "provid[e] a reasonably semi-impermeable surface between the panels in order to reasonably shed rainwater from the expansion and contraction area between the panels."

ECF 5-2, § 3; *see* ECF 1-2, ¶ 10. KIIT also agreed to install "gutters on the edge of [the canopy] to reasonably collect runoff from the [canopy]." ECF 5-2, § 3; *see* ECF 1-2, ¶¶ 10, 19. Yet "water continues to pour through the canopy," and "the gutter system does not properly direct water away from the canopy area." ECF 1-2, ¶ 20. Consequently, the plaintiffs' businesses are negatively impacted. *Id.* ¶¶ 15, 20.

KIIT contends that the complaint fails to allege a breach of the contractual provision requiring a "reasonably semi-impermeable" canopy. In its view, that phrase unambiguously means that *some* precipitation can fall from the solar canopy to the parking lot below, and the complaint confirms that the canopy provides such partial protection. *See* ECF 5, at 5-7. The Court disagrees.

"Determining the existence of a contract ambiguity presents a question of law for the court." *Bank v. Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008). Contractual language is ambiguous if "'the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.'" *A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transportation Auth.*, 479 Mass. 419, 431 (2018) (quoting *id.*). To assess whether such language is ambiguous, the Court "look[s] both to the contested language and to the text of the contract as a whole." *Balles v. Babcock Power Inc.*, 476 Mass. 565, 572 (2017).

Here, the phrase "reasonably semi-impermeable" is ambiguous because it can plausibly be interpreted in multiple ways. KIIT is correct that the term cannot mean *impermeable*, because the parties in the sublease amendment acknowledged that the water mitigation system "cannot be designed and constructed to be completely impermeable and will not completely shelter the areas below the [canopy]." ECF 5-2, § 3. Nor can the term be interpreted as *permeable*, to mean that the canopy does not stop any precipitation. There is a wide gray area, however, between impermeable and permeable. The phrase "reasonably semi-impermeable," which is not defined in the agreement

5

or in any dictionary, does not specify how much rain or snow can pass through the canopy. *See* ECF 9, at 8. It need not mean, as KIIT argues, that *any* amount of precipitation through the canopy is permissible. The phrase is, instead, inherently ambiguous, reflecting an undefined range of acceptable precipitation. While the complaint does not identify what percentage of precipitation comes through the canopy, its allegation that "there has been a constant flow of water through the solar panel gaskets that is continuous in rainy weather" is sufficient to state a claim that KIIT breached its contractual commitment to provide a "reasonably semi-impermeable" canopy. ECF 1-2, ¶ 15. The meaning of the phrase "reasonably semi-impermeable," together with the question whether KIIT breached the sublease amendment by failing to provide a reasonably semi-impermeable canopy, are questions for the finder of fact, not questions appropriate for resolution on a motion to dismiss. *See Browning-Ferris Indus., Inc. v. Casella Waste Mgmt. of Massachusetts, Inc.*, 79 Mass. App. Ct. 300, 307 (2011) ("Once a contractual ambiguity emerges, the meaning of the uncertain provision becomes a question of fact for the trier.").

KIIT separately argues that the plaintiffs do not allege a breach of the contractual provision requiring it to provide "gutters on the edge of [the canopy] to reasonably collect runoff from the [canopy]" and "downspouts from such gutters at reasonable intervals . . . , taking the rainwater from such gutters and directing it down to the paved surface below the [canopy]." ECF 5-2, § 3. But the complaint alleges that "the gutter system does not properly direct water away from the canopy area." ECF 1-2, ¶ 20. It further alleges that the water mitigation system as a whole, including the gutters, has caused "a constant flow of water" and, in turn, "an unreasonable interference with [the plaintiffs'] business and . . . increased liability issues for both [p]laintiffs." *Id.* ¶ 15. Yet KIIT agreed in the sublease amendment that the solar panel installation would "not unreasonably interfere with [the plaintiffs'] ongoing business operations." ECF 5-2, § 3. Taken

together, these allegations give rise to a plausible claim that KIIT violated its contractual obligations for the canopy's gutter system. Accordingly, the breach of contract claim will not be dismissed.

## II.     Breach of Implied Covenant of Good Faith and Fair Dealing.

Count II asserts a claim for breach of the implied covenant of good faith and fair dealing. While "'[e]very contract implies good faith and fair dealing between the parties to it,'" this implied "covenant does not create new rights and duties not already provided for in the contract." *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 586 (2024) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991)). It does, however, "'requir[e] that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.'" *Buffalo-Water 1, LLC v. Fid. Real Est. Co., LLC*, 481 Mass. 13, 27 (2018) (quoting *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 570 (2010)). Although the plaintiffs need not plead bad faith, they must allege "'a lack of good faith,'" which "'can be inferred from the totality of the circumstances.'" *A.L. Prime*, 479 Mass. at 434 (quoting *Robert & Ardis James Found. v. Meyers*, 474 Mass. 181, 189 (2016)). "Lack of good faith 'carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.'" *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013) (quoting *Hartford Acc. & Indem. Co. v. Millis Roofing & Sheet Metal, Inc.*, 11 Mass. App. Ct. 998, 999 (1981)).

KIIT contends that the complaint does not plausibly allege lack of good faith. But this argument ignores the complaint's factual allegations that KIIT has "injur[ed] the right of the [plaintiffs] to the fruits of the contract." *Buffalo-Water*, 481 Mass. at 27 (quotation marks omitted). As discussed, KIIT agreed to install a "reasonably semi-impermeable" canopy that would "not unreasonably interfere with [the plaintiffs'] ongoing business operations." ECF 5-2, § 3. Yet, the

complaint alleges, the canopy "interfere[s] with . . . North End's business and creates a hazard for both [p]laintiffs' employees and customers" because "water continues to pour through" it onto the parking lot below. ECF 1-2, ¶ 25. Based on "the totality of the circumstances," the plaintiffs have adequately alleged that KIIT has "violate[d] the[ir] reasonable expectations" from the amended sublease agreement. *A.L. Prime*, 479 Mass. at 434 (quotation marks omitted). Their claim for breach of the implied covenant of good faith and fair dealing will therefore survive.

**CONCLUSION AND ORDER**

For the foregoing reasons, KIIT's motion to dismiss, ECF 4, is GRANTED with respect to Counts III and IV but DENIED as to Counts I and II.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated:  October 28, 2025                    UNITED STATES DISTRICT JUDGE